Mr. Christopher Thomas Executive Secretary State of Arkansas Justice Department Justice Building Little Rock, Arkansas 72201
Dear Mr. Thomas:
This is in response to your request for an opinion regarding the disposition of Arkansas Reports through Volume 283. You have asked the following specific question:
 May we have these volumes of the Arkansas Reports determined to be surplus commodities of the State removed from the Secretary of State's inventory, transferred to Marketing and Redistribution, and sold at public auction at a price set in contravention of [Ark. Stat. Ann. 14-421 and 421-1 (Repl. 1979) and Act 644 of 1987]?
Act 644 of 1987 amends Ark. Stat. Ann. 14-421.1 (Repl. 1979) to provide for the sale of the Arkansas Supreme Court Reports "for an amount equal to the cost of the volume plus postage costs." The Emergency Clause notes that the price to be charged for volumes of the Arkansas Reports must be increased "to enable the State to recover the costs of printing and binding of the volumes and the postage cost for mailing."
While this provision at first glance may appear to preclude the sale of Arkansas Reports for any price other than that cited therein, Act 482 of 1979, "Arkansas Purchasing Law," which is codified at Ark. Stat. Ann. 14-233 et seq. (Repl. 1979), must be considered. The State Purchasing Director is given authority under 14-275.1 to promulgate regulations governing inter alia "the sale, lease or disposal of surplus commodities by public auction, competitive sealed bidding, or other appropriate method designated by regulation. . . ."
"Surplus Commodities" are defined under 14-275(E) as "any commodities, other than expendable commodities, no longer having any use to the State. This includes obsolete commodities, scrap materials and non-expendable commodities that have completed their useful life cycle."
These two legislative enactments, Act 644 of 1987 and Act 482 of 1979, appear to conflict to the extent the Arkansas Supreme Court Reports are deemed "surplus commodities." Act 644 on its face appears to dictate the price, and no exception is made should the Reports become "surplus," which is apparently the case at present.
However, established rules of statutory construction dictate that seemingly contradictory provisions be reconciled, so far as practical, so as to make them consistent, harmonious, and sensible. Gilbert v. Gilbert Timber Co., 19 Ark. App. 93,717 S.W.2d 220 reh. den. 19 Ark. App. 93, 719 S.W.2d 284 (1986). The absurdity of an assertion that the State must maintain these volumes indefinitely, even though they have no significant value and are no longer marketable, is obvious. Rather, the two Acts in question may be read consistently to authorize the disposition of any "surplus" volumes in accordance with regulations promulgated by the State Purchasing Director.
It is my opinion, therefore, that the answer to you question is yes to the extent these volumes constitute "surplus" commodities. Although it is impossible to conclusively state that the volumes are "surplus" based upon the facts presented, this conclusion would appear to be reasonable. The regulations promulgated by the Director of Purchasing should also be consulted in this regard.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.